1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    NORTHERN DISTRICT OF CALIFORNIA

7

8    SHAMECCA SWISHER,                          No. C 05-1546 SI

9              Plaintiff,                        **ORDER DENYING MOTION FOR**
                                                 **SUMMARY JUDGMENT**
10        v.

11   JOANNE B. BARNHART, Commissioner of
     Social Security,
12
              Defendant.
13   _____/

14

15

16   Defendant's motion for summary judgment came on regularly for hearing on November 17,

     2006.  All parties were represented by counsel.  Having considered the papers and pleadings of the

17   parties, and the arguments of counsel, the Court DENIES the motion for the reasons set out below.

18

19

20                              **BACKGROUND**

21        Both parties agree on the following facts:  Plaintiff Shamecca Swisher is an employee of the

22   Social Security Administration ("SSA").  She is an African-American woman who has worked as a clerk

     at the SSA's San Leandro office since 1990.  In 2002, she applied for promotion to a GS-5/6/7 Service

23   Representative position ("SR Position") in San Leandro.  At the time, plaintiff's direct supervisor was

24   Janet Dawkins, and Dawkins' supervisor was Norma Braswell, who was the District Manager for the

25   San Leandro office.  Braswell and Swisher worked together in the San Leandro office for five years.

26   Braswell is Hispanic.

27        The SSA human resources department assembled a list of current employees who were "well-

28   qualified" candidates for the SR Position.  The list included two people:  plaintiff, and an African-

     American woman from the SSA Richmond office named Candida Carr.  Braswell decided not to hire

*United States District Court*

*For the Northern District of California*

1   either of the two women on the "well-qualified" list.  Braswell then reviewed resumes from non-SSA

2   employees who had applied through the Federal Career Intern Program (FCIP).  Braswell, her supervisor

3   Eddie Cooksey, and another supervisor interviewed several FCIP candidates.  Braswell ultimately

4   decided to hire Paula Perez-Rosales.[1]

5            Plaintiff learned that she did not receive the position on June 25, 2002.  On the same day,

6   plaintiff emailed her union representative, questioning why she did not get the position.  The email stated

7   in part:

8            Hey Girl, what do you think about this?  Is there any way I can see why I didn't get the
         SR position?  I think I am not to[o] sure but the SR may have been selected off the

9         streets.  I don't remember if the announcement included off the street candidates plus she
         just happens to be Hispanic . . . .

10
    As a result of the email, plaintiff's union started an investigation of the reasons plaintiff was not given

11   the SR Position.

12           Seventy-six days later, plaintiff contacted an Equal Employment Opportunity ("EEO")

13   Counselor, claiming that she had been subjected to race discrimination when she was not selected for

14   the SR Position.  On December 31, 2002, plaintiff filed a formal complaint with the SSA.  On October

15   4, 2004, an administrative judge dismissed plaintiff's claim because plaintiff failed to meet with an EEO

16   Counselor within forty-five days of the alleged discriminatory incident as required by 29 C.F.R.

17   §§ 1614.105(a)(1) and 1614.107(a)(2).  On October 28, 2004, the SSA adopted the administrative

18   judge's decision and dismissed the complaint.  Plaintiff appealed the Agency's order to the U.S. Equal

19   Employment Opportunity Commission, Office of Federal Operations ("EEOC").  On February 24, 2005,

20   the EEOC affirmed the Agency's order and issued a Notice-of-Right-to-Sue letter.  On April 15, 2005,

21   plaintiff filed the instant complaint for race discrimination.  Defendant subsequently filed a motion to

22   dismiss, based in part on the argument that plaintiff's claim is time barred.  The Court rejected this

23   argument.

24           The principal disputed factual issues on this motion are (1) whether plaintiff knew, or should

25   have known, of the facts underlying her discrimination claim within the 45 day EEO time limit; (2)

26

27

28           [1]Both parties imply that Perez-Rosales is Hispanic, as her surname suggests.  This fact, however,
    does not explicitly appear anywhere in the record.

1  whether defendant had posted notices regarding EEO requirements in the office break room, thereby

2  giving plaintiff constructive notice of the EEO time limits; (3) whether Braswell actually made a

3  determination that plaintiff was less qualified for the SR Position than Perez-Rosales; and (4) whether

4  plaintiff was in fact less qualified than Perez-Rosales

5

6                                                    **LEGAL STANDARD**

7          The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings,

8  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

9  that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a

10 matter of law."  Fed. R. Civ. P. 56(c).

11         In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial

12 burden of identifying for the court those portions of the materials on file that it believes demonstrate the

13 absence of any genuine issues of material fact," the burden of production then shifts so that "the

14 nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, '*specific facts* showing

15 that there is a genuine issue for trial.'"  *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809

16 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)); *Kaiser Cement*

17 *Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir.), *cert. denied*, 479 U.S. 949 (1986).

18         In judging evidence at the summary judgment stage, the Court does not make credibility

19 determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the

20 nonmoving party.  *T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

21 *Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).  The

22 evidence the parties present must be admissible.  Fed. R. Civ. P. 56(e).  Conclusory, speculative

23 testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat

24 summary judgment.  *See Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49 (2nd Cir. 1985);

25 *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Hearsay statements found

26 in affidavits are inadmissible.  *See, e.g., Fong v. American Airlines, Inc.*, 626 F.2d 759, 762-63 (9th Cir.

27 1980).  The party who will have the burden of proof must persuade the Court that it will have sufficient

28 admissible evidence to justify going to trial.

**DISCUSSION**

Defendant argues two grounds for granting summary judgment:  (1) the evidence demonstrates that plaintiff had constructive notice of the EEO time limit for bringing a complaint, and that she suspected discriminatory action within that time limit; and (2) there is no triable issue as to the validity of defendant's legitimate, nondiscriminatory reason for the employment action.

**1.     The EEO Time-Bar**

In its Order denying defendant's motion to dismiss, the Court found that plaintiff's case was not time-barred, because plaintiff had neither actual nor constructive knowledge of the statutory time limit, nor of the fact that a discriminatory action had occurred.  Defendant now argues that the evidence shows that plaintiff had constructive knowledge of the time limit, and suspected that she was the victim of a discriminatory action within that time limit.

29 C.F.R. § 1614.107 states in relevant part:  "Prior to a request for a hearing in a case, the agency shall dismiss an entire complaint . . . [t]hat fails to comply with the applicable time limits contained in []§ 1614.105."  The cross-referenced section, 29 C.F.R. § 1614.105(a), states in relevant part:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a [EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.
>
> (2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

In this case, it is undisputed that plaintiff failed to meet with an EEO Counselor within the forty-five day window required by 29 C.F.R. § 1614.105(a)(1).  The Court previously found, however, that plaintiff's situation falls within the exceptions stated in 29 C.F.R. § 1614.105(a)(2).  Based on plaintiff's declarations, the Court found that she was unaware of the 45-day time limit. *See* Order (Docket No. 28)

4

at 3:18-24 ("In a declaration, plaintiff makes numerous statements to that effect, including: '[d]uring the time I have worked at SSA I did not know anything about reporting a complaint of discrimination, it was new to me,' 'I had no idea . . . that I had to report this sort of thing to an EEO Counselor,' 'I have never been instructed that I had to report incidents of discrimination to an EEO Counselor,' and '[t]here has never been bulletin board posters at my office saying anything about reporting incidents of discrimination [] to an EEO Counselor, let alone that it had to be reported within 45 days.' (quoting Prior Decl. of Shamecca Swisher, ¶¶ 2-5)).

The Court also rejected defendant's argument that plaintiff had constructive notice of the 45-day limit on June 25, 2002, when she contacted her union representative, who was familiar with the deadline. In *Johnson v. Henderson*, 314 F.3d 409 (9th Cir. 2002), the court held that when a plaintiff retains counsel, she "gain[s] the means of knowledge of her rights and can be charged with constructive knowledge of the law's requirements." *Id.* at 414. The Court found unconvincing defendant's contention that a union representative is analogous to a lawyer, and declined to extend *Johnson* into new territory.

As a separate basis for excepting plaintiff from the time requirement, the Court found that plaintiff's June 25, 2002, email was not sufficient to establish that she should have reasonably known that a discriminatory act had occurred. *See* 29 C.F.R. § 1614.105(a)(2). The Court found that plaintiff did not jump to conclusions, but diligently investigated the situation and did not complain until she found out that only African-Americans were on the "well-qualified" list, and that the person hired was not African-American, and not on the list.

Defendant now contends that evidence acquired during discovery proves that plaintiff had constructive notice of the time limit, and that she suspected discrimination within that time limit. Defendant first points to the following passage from plaintiff's deposition:

> Q:      Okay, now is it correct that you first learned that you were not selected in June of 2002?
>
> A:      Yes.
>
> Q:      Okay.  And at that time, you already indicated that you believed that Ms. Braswell had been discriminating against you from what sounds like, based on your testimony, a couple of years.  Is that correct?

A:    At that point, I knew I was being treated unfairly or differently.  And when I did not get the selection, then I knew it was discrimination.

Martikan Decl., Ex. C at 119.  Defendant argues that this passage proves that plaintiff "knew" she was a victim of discrimination *at the very moment* she learned she was not selected.  Defendant's inference is reasonable.  However, it is equally reasonable to infer from plaintiff's statement that once she found out she was not selected, *and confirmed all of the surrounding circumstances*, then she "knew it was discrimination."

Even if this passage proves beyond dispute that plaintiff knew enough of the facts to make a discrimination claim within the 45-day time limit, defendant has not disproved the other ground for equitable tolling under § 1614.105(a)(2):  that plaintiff had no actual or constructive notice of the time limits.  Defendant argues that plaintiff had constructive notice of the 45 day time limit because defendant posted notices regarding the EEO process and requirements on a bulletin board in the break room, and gave annual presentations about the EEO process and requirements to employees.  *See* Braswell Decl. ¶ 10.  "[C]onstructive knowledge will be imputed to an employee where an employer has fulfilled [its] statutory obligation by posting notices informing employees of their rights and obligations under Title VIII."  *Robinson v. Runyon*, 96 FEOR 11331 at 2 (EEOC OFO 1996) (quoting *Yashuk v. United States Postal Service*, EEOC Request No. 05890382 (June 2, 1989).  In order to establish constructive notice, the defendant must provide "specific evidence that it posted notices concerning the EEO process where appellant worked [and] that any such posters contained notice of the time frames for EEO Counselor contact, or that the applicable time limits were otherwise conveyed to appellant."  *Id.*  "[A] generalized affirmation that an agency posted EEO information is insufficient for constructive knowledge of the time limits for EEO Counselor contact."  *Id.* (citing cases).

Plaintiff admitted in her deposition that there is a bulletin board in the break room, and that she had attended the annual presentations, but did not remember anything about the 45 day time bar.  *See* Marikan Decl., Ex. A at 48-49.  Furthermore, in her declaration in opposition to the motion to dismiss, plaintiff stated that "[t]here were no bulletin board poster notices at her office saying anything about reporting incidents of discrimination, or even harassment to an EEO Counselor, let alone that it had to be reported within 45 days of knowing or reasonably knowing of discrimination."  ¶ 3.  As evidence that

there was such notice, defendant presents only the declaration of Braswell.  *See* Braswell Decl. ¶ 10. This constitutes little more than "a generalized affirmation that an agency posted EEO information." *Robinson*, 96 FEOR 11331 at 2 (citing cases).  There is thus a triable issue of fact as to whether there were, in fact, informative EEO notices on the bulletin board at the time of the allegedly discriminatory action.

**2.      The merits of the discrimination claim**

A plaintiff may make a *prima facie* case of discrimination through direct or circumstantial evidence.  *See Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997).  A plaintiff may also create an inference of unlawful discrimination by meeting the four requirements outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  Once a plaintiff meets this burden of production, the employer must offer a legitimate, nondiscriminatory reason for the adverse employment decision.  *See Reeves v. Sanderson Plumbing Product, Inc.*, 530 U.S. 133 (2000).  The plaintiff may rebut the employer's legitimate, nondiscriminatory reason by showing that the proffered reason is pretextual.  *See Collings v. Longview Fiber Co.*, 63 F.3d 828, 834 (9th Cir. 1995).          In this circuit, to show pretext on summary judgment, plaintiff must offer "substantial evidence that the employer's proffered reasons were not reliable, . . . or direct evidence of discrimination." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219 (9th Cir. 1998); *see also Chuang v. University of California Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000) ("[A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer.") (citation omitted).  The Ninth Circuit has held that "there will always be a question for the factfinder once a plaintiff establishes a prima facie case and raises a genuine issue as to whether the employer's explanation for its action is true.  Such a question cannot be resolved on summary judgment." *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993). "Once a *prima facie* case is established either by the introduction of actual evidence or reliance on the *McDonnell Douglas* presumption, summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the 'elusive

factual question of intentional discrimination.'" *Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1148 (9th Cir. 2006) (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985), *amended by* 784 F.2d 1407 (1986) (citation omitted)).  The Ninth Circuit has also noted, however, that

> in deciding whether an issue of fact has been created about the credibility of the employer's nondiscriminatory reasons, the district court must look at the evidence supporting the *prima facie* case, as well as the other evidence offered by the plaintiff to rebut the employer's offered reasons.  And, in those cases where the *prima facie* case consists of no more than the minimum necessary to create a presumption of discrimination . . ., plaintiff has failed to raise a triable issue of fact.

*Wallis v. J.R. Simplot, Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

The parties here do not contest that plaintiff can show a *prima facie* case of discrimination, nor do they contest that defendants can offer a legitimate, nondiscriminatory reason for the adverse employment decision.  The principal issue on this motion is whether defendants' legitimate, nondiscriminatory reasons are reliable, or whether they are merely pretext.

Defendant's legitimate, nondiscriminatory reason for hiring Ms. Perez-Rosales, rather than promoting plaintiff to the position, is essentially that based on her work habits and capabilities, plaintiff "would not be able to perform the Service Representative duties in a satisfactory manner."  Mot. at 6:8-9.  Ms. Braswell allegedly made this decision based on five years of first-hand knowledge of plaintiff's work habits and quality.  *See* Braswell Decl. ¶ 2.  As corroborating evidence of Ms. Braswell's assessment of plaintiff, defendants point to the declaration of Eddie Cooksey, who was Ms. Braswell's supervisor.  Mr. Cooksey states that he agreed with Ms. Braswell's decision not to promote plaintiff, based on his personal observation of plaintiff's shortcomings, as well as comments he received over the years, regarding plaintiff, from Ms. Braswell and her predecessor, Marianne Staples.  *See* Cooksey Decl. ¶ 4.  Defendant also provides the declaration of Elsie Garcia, stating that she remembers complaining about late overpayment letters from the San Leandro office, during the time that plaintiff was in charge of preparing such overpayment letters.  *See* Garcia Decl. ¶ 3.  Defendant also points to plaintiff's deposition testimony, in which she admitted that her immediate supervisor, Janet Dawkins, twice counseled her about her timeliness in completing work assignments.  *See* Martikan Decl., Ex. A at 35.  This evidence, defendant contends, confirms the validity of Ms. Braswell's decision not to promote plaintiff on the basis of her poor work performance.

8

In response, plaintiff contends that she never received any written expression of dissatisfaction with her performance. In fact, plaintiff testifies that from 1992 to 2001, she received ten performance awards, all of which were approved by Ms. Braswell. *See* Meyer Decl., Ex. A (Swisher Depo.), at 30-33. These awards were based on various criteria, including timeliness (*see id.* at 33:11-12), courtesy towards the public (*see id.* at 32:13-14), and accuracy (*see id.* at 32:20). Plaintiff also contends that the only time she received negative feedback in her annual performance reviews was when she was pregnant, and when she was recovering from a concussion. *See id.* at 35:13-19, 63:3-5. At no other time, plaintiff contends, was she ever informed that she needed to perform her duties more quickly. *See id.* at 35:20-36:22.

Mr. Cooksey's declaration, plaintiff argues, is not worthy of credence, because it contains falsehoods. In particular, plaintiff contests Mr. Cooksey's statement that Ms. Braswell's predecessor, Marianne Staples, expressed dissatisfaction with plaintiff's performance to him. *See* Cooksey Decl. ¶ 4. Plaintiff presents the declaration of Ms. Staples, which states that she never made such complaints regarding plaintiff to Mr. Cooksey. *See* Staples Decl. ¶ 4. Plaintiff also contends that the declaration of Ms. Garcia, stating that she complained to Ms. Braswell regarding late overpayment letters coming out of the San Leandro office, is of no weight because plaintiff was not the only employee responsible for forwarding overpayment letters to Ms. Garcia's office. *See* Swisher Decl. ¶¶ 2-3.

As to why she hired Ms. Perez-Rosales instead, Ms. Braswell states in her affidavit:

"I felt she had the best qualifying experience among the candidates . . . . Ms. Perez-Rosales had experience with heavy workloads, multi-tasking, working with the public and in dealing with complex issues. She also had experience in customer service dealing with both internal and external customers. In describing her last position, she indicated that she had multiple duties. I felt she was the best candidate because of this experience because [a Service Representative] has to handle many workloads at once."

Braswell Decl., Ex. A at 1.[2]

Plaintiff argues that the evidence belies the genuineness of Ms. Braswell's assessment of Ms. Perez-Rosales as the "best candidate." According to the declaration of Katrina Lopez, Ms. Perez-

_____

[2] Defendant also states, citing to Ms. Braswell's affidavit, that "Braswell was impressed with the interviewing skills of the candidate that she chose for the job, Paula Perez-Rosales . . . ." Mot. at 6:26-27. Nowhere in the affidavit, nor anywhere else in the record, does Ms. Braswell so state. The Court cautions defendant against misstating the evidence.

9

Rosales would not have made the agency's "well-qualified" list. *See* Lopez Decl. ¶¶ 12-13.  In reply, defendant argues that this evidence is a "red herring," as the "well-qualified" list is only designed to measure internal candidates, and Ms. Perez-Rosales "thus would not have been evaluated for placement on the well-qualified list." Reply at 4:16-17.  The fact that she would not have made the well-qualified list, had she been an internal candidate, nonetheless tends to prove that she was, in fact, less qualified than plaintiff.  Furthermore, Ms. Braswell admitted in her deposition that she had no knowledge of the quality of work performed by Ms. Perez-Rosales at her previous job. *See* Braswell Depo. at 49:20-24. Ms. Braswell also knew that Ms. Perez-Rosales had been laid off from her previous job, and did not ascertain why she had been laid off. *See id.* at 49:14-15.  Finally, plaintiff presents evidence that both Ms. Braswell and Ms. Perez-Rosales are of Hispanic descent. *See* Braswell Depo. at 55:2-3,

Based on the foregoing, the Court concludes that there is a "genuine issue as to whether the employer's explanation for its action is true." *Washington v. Garrett*, 10 F.3d at 1433.  Apparently on the basis of only one interview and a resume, Ms. Braswell claims she was able to conclude that Ms. Perez-Rosales was better qualified for the position than plaintiff, who had received numerous awards for her work over the years, and few, if any, written demerits.  There is also evidence that Ms. Perez-Rosales was objectively less qualified than plaintiff.  This evidence could lead a reasonable trier of fact to conclude that defendant's explanation for its employment decision was pretext for racial discrimination.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion for summary judgment. (Docket No. 43).  The Court DENIES as moot defendant's objections to plaintiff's summary judgment evidence, as the evidence is immaterial to the Court's findings.  (Docket No. 56).

**IT IS SO ORDERED.**

DATED:  November 17, 2006

SUSAN ILLSTON
United States District Judge

10